IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| GREGORY TAYLOR, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 1:25-cv-497 (LMB/IDD) |
| CLARENCE BYRD, | ) ) ) |
| Defendant. | ) ) |

<u>MEMORANDUM OPINION</u>

Before the Court is plaintiff Gregory Taylor's ("Taylor" or "plaintiff") Motion for Summary Judgment ("Motion"), [Dkt. No. 17], requesting that the Court grant summary judgment in plaintiff's favor on the basis that defendant failed to respond to plaintiff's requests for admissions. The Motion is fully briefed and plaintiff has waived oral argument on his Motion. [Dkt. No. 19]. Furthermore, oral argument will not assist the decisional process. For the reasons explained below, plaintiff's Motion, [Dkt. No. 17], will be granted, as modified.

I.

This civil action arises from <u>pro se</u> defendant Clarence Byrd's ("Byrd" or "defendant") solicitation of plaintiff's $110,000.00 business venture investment. [Dkt. No. 1] at 4. Byrd is the principal and founder of RN Appz, LLC ("RN Appz"), a "Virginia limited liability company that operates in the field of technology solutions for nurses."[1] [Dkt. No. 1] at 4. Specifically, an April

---

[1] The following facts are taken from plaintiff's Complaint, [Dkt. No. 1], and are not disputed by defendant. RN Appz registered with the Virginia State Corporate Commission on or about March 11, 2019 with a principal office address located at 1100 N. Glebe Road, Suite 1010, Arlington, Virginia 22201. [Dkt. No. 1] at 4. On June 30, 2022, RN Appz became inactive for failure to pay a registration fee. <u>Id.</u> On November 17, 2024, the Company's registered agent, URS Agents, LLC, resigned from its position. <u>Id.</u>

2019 RN Appz stockholder report describes RN Appz as "working to establish a market presence in the nursing area through production of interactive technological products catered to the practice of nursing." Id.

In 2018, Taylor met Byrd while the two were working at INOVA Fairfax Hospital ("INOVA"), in Fairfax County, Virginia. Id. at 5. In September 2018, at a breakfast meeting between the two, Byrd told Taylor about RN Appz and OR Notes, a subsidiary of RN Appz "designed to create an educational material platform for nurses." Id. Byrd also told Taylor that RN Appz and OR Notes "did not have any debt[,]"and that Byrd was "in the process of negotiating with INOVA regarding development of an educational curriculum for its nurses[.]" Id. at 5-6. Relying on these representations, Taylor provided an initial investment of $15,000 to Byrd. Id. at 6. During subsequent conversations, Byrd continued to represent to Taylor that neither RN Appz nor OR Notes had any debt, and that Byrd was making progress in his negotiations with INOVA. Id. Taylor also learned more about Byrd's educational background, which included nursing education from the University of North Carolina, and Byrd's knowledge of cryptocurrency. Id. at 6-7. In September 2018, Byrd showed Taylor a bank account with a dollar balance of $12,000,000.00, which Byrd referred to as his cryptocurrency investment account. Id. at 7. Based on these representations, Taylor decided to increase his investment and paid a total of $110,000.00 to Byrd in multiple installments. Id. at 7-8.

On August 27, 2019, Taylor entered into a written Investment Agreement with RN Appz,. Id. at 8. That agreement was signed by Byrd as the representative of RN Appz. Id. The Investment Agreement stated that Taylor's investments would be used by RN Appz "to conduct its business operations[.]" [Dkt. No. 1-1] at 1. In exchange for Taylor's investment, he would receive 20% of RN Appz's corporate shares. Id. at 3. Under the Investment Agreement, Taylor was to be provided

"with all relevant documentation and information pertaining to OR Notes" and "all reasonable information" related to RN Appz. Id. at 4. The Investment Agreement further represented that "[t]he books and records of RN [Appz] are complete and accurate in all material respects and have been maintained in accordance with sound business practices." Id.

After the Investment Agreement was executed, Taylor tried to help Byrd generate revenue for RN Appz. [Dkt. No. 1] at 8. In September 2020, Taylor introduced Byrd to Karen Graham ("Graham"), a Nurse Educator at MedStar Health System. Id. Although Byrd and Graham had several conversations regarding educational material for nurses, no such materials were produced. Id. at 8-9. Furthermore, Taylor also recruited Dr. David Lin ("Dr. Lin") and Dr. Amir Assili ("Dr. Assili"), two local surgeons, as potential clients interested in developing a surgical medical education platform; however, in December 2022, during a meeting between Dr. Lin, Dr. Assili, Taylor, and Byrd, Byrd presented no substantive content demonstrating the progress made on the project. Id. at 9. As a result, Dr. Lin and Dr. Assili "abandoned the project due to concern over the lack of progress and execution." Id.

In June 2023, Taylor requested to be bought out of RN Appz for the price of his total investment, $110,000.00. [Dkt. No. 1] at 10. Byrd rejected the request, stating that RN Appz "did not . . . have the assets to buy [Taylor] out for the price of his [investment]." Id. In November 2023, Byrd alleged that "he began winding down [RN Appz]" due to personal affairs, and that he planned to "dissolve the [c]ompany given the lack of revenue generating projects." Id. On December 11, 2023, Taylor messaged Byrd, acknowledging Byrd's family matters, and referring two potential investors to Byrd. Id. On January 9, 2024, Taylor followed up about the two potential investors and also requested paperwork regarding the dissolution of RN Appz for the filing of his taxes. Id. at 11. Byrd responded stating that he would "make every effort" to have the paperwork

3

"completed" within the "next [two] weeks[;]" however, no paperwork was sent to Taylor. Id. at 10-11. Throughout March and April 2024, Taylor continued to pursue information regarding the dissolution of RN Appz, but none was supplied. Id. at 11-12. In May 2024, Taylor followed up again, explaining to Byrd that it was "critical" he receive the 2023 financial statements and tax information for RN Appz immediately. Id. at 12. Byrd responded, stating that he did not have the financial statements, had not received his own documentation because of his move from Virginia to North Carolina, and blamed the United States Postal Service ("USPS") for losing the documentation during Byrd's move to North Carolina. Id. at 12-13. After Taylor expressed concern that Byrd had previously provided several deadlines that he had already failed to meet, Byrd did not reply. Id. at 13.

## II.

On March 20, 2025, Taylor filed this four-count Complaint against Byrd, alleging fraudulent inducement (Count I), actual fraud (Count II), unjust enrichment (Count III), and conversion (Count IV). Id. at 13-20. The Complaint requests compensatory damages of $110,000.00; punitive damages totaling $350,000.00 pursuant to Va. Code. § 8.01-38.1; attorneys' fees and costs associated with this civil action; pre- and post-judgment interest; and any further relief this Court deems appropriate. Id. at 20. On May 2, 2025, Byrd filed a Response, [Dkt. No. 5], which has been construed as an Answer, and a Scheduling Order was issued on that same day, [Dkt. No. 6]. The Scheduling Order set the initial pretrial conference for May 21, 2025, a final pretrial conference for September 18, 2025, and a discovery cutoff for September 12, 2025. Id. Although Byrd received notice of the pretrial conference, he did not attend.[2] See [Dkt. No. 10].

---

[2] On May 19, 2025, Byrd filed a Motion to Continue the Initial Pretrial Conference, stating that his receipt of the Scheduling Order on May 5, 2025 gave him insufficient notice to hire an attorney to represent him in this matter. [Dkt. No. 8]. The Court denied his motion, finding that

4

Pursuant to the Court's Rule 16(B) Scheduling Order, [Dkt. No. 10], Taylor served Byrd with his Rule 26(a)(1) disclosures and discovery requests, which included interrogatories, requests for production, and requests for admissions. [Dkt. No. 18] at 2. Taylor's First Set of Requests for Admissions was served on July 30, 2025, making Byrd's responses due on or before August 29, 2025. [Dkt. No. 18-1] at 1. On September 18, 2025, Taylor filed his Rule 26(a)(3) witness and exhibit list before the final pretrial conference. [Dkt. No. 14]; however, as of November 11, 2025, well past the discovery deadline, Byrd had failed to serve his initial disclosures or any discovery responses, and had not filed either a witness or exhibit list. See [Dkt. No. 25]. On September 18, 2025, both parties appeared at the final pretrial conference, where Byrd was admonished for having failed to respond to plaintiff's discovery requests. [Dkt. No. 18] at 2. In particular, Byrd was warned that his failure to respond to plaintiff's requests for admissions rendered those admissions admitted.[3] Id. See also [Dkt. No. 25] at 2. Given that posture, the Court urged the defendant to try to settle the case. Settlement efforts were unsuccessful, and on October 14, 2025, Taylor filed the pending Motion for Summary Judgment ("Motion"), [Dkt. No. 17], to which Byrd has responded.

### III.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving

---

he had ample notice of the hearing date. [Dkt. No. 11]. In spite of his motion being denied, defendant failed to appear at the initial pretrial conference before the assigned magistrate judge. Id.

[3] On September 8, 2025, Byrd filed a Motion to Compel Arbitration and Stay Proceedings, asserting that the Investment Agreement contained a dispute resolution clause "requiring that disputes be resolved through arbitration upon the election of a party." [Dkt. Nos. 12-13]. The motion was denied because Byrd was "not entitled to enforce the Investment Agreement because he [was] not a party to the contract." [Dkt. No. 22] at 2.

5

party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." Variety Stores v. Wal-Mart Stores, Inc., 888 F.3d 651, 659 (4th Cir. 2018). Once the moving party has met its burden to show that it is entitled to judgment as a matter of law, the nonmoving party "must show that there is a genuine dispute of material fact for trial . . . by offering sufficient proof in the form of admissible evidence." Id. (quoting Guessous v. Fairview Prop. Inv'rs., LLC, 828 F.3d 208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

IV.

In his Motion, Taylor argues that because Byrd failed to respond to his Requests for Admissions ("RFAs"), "all matters contained therein are deemed admitted, and there is no genuine dispute as to any material fact." [Dkt. No. 18] at 7. Taylor asserts that based on these deemed admissions, the Court should grant summary judgment in his favor on all counts alleged in the Complaint. Id. In response, Byrd merely contests Taylor's reliance on Byrd's default admissions to support the Motion and fails to provide admissible evidence disputing them. See generally, [Dkt. No. 24].

A.

Federal Rule of Civil Procedure 36 governs requests for admissions. It provides, in relevant part, as follows:

> A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

Fed. R. Civ. P. 36(a)(3).

6

"As other federal courts have noted, the 'sanction for failure to respond to a request for admission is self executing.'" Precision Franchising, LLC v. Gatej, 2012 WL 6161223, at *5 (E.D. Va. Dec. 11, 2012) (quoting Hill v. Laury, 2006 WL 2631796 (E.D.Va. Sept. 13, 2006)). "[O]nce a matter that is properly subject of an admission under Rule 36 has been admitted during discovery, the district court is not free to disregard that admission." Adventis, Inc. v. Consol. Prop. Holdings, Inc., 125 F. App'x 169, 173 (4th Cir. 2005). "Matters admitted under Rule 36 are 'conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.'" Precision Franchising, 2012 WL 6161223, at *5 (quoting Fed. R. Civ. P. 36(b)). "This conclusive effect applies equally to those admissions made affirmatively and those established by default, even if the matters admitted relate to material facts that defeat a party's claim." Id. (quoting Am. Auto. Ass'n (Inc.) v. AAA Legal Clinic of Jefferson Crooke, 930 F.2d 1117, 1120-21 (5th Cir. 1991)).

Here, Byrd failed to respond to Taylor's Requests for Admissions by August 29, 2025. See [Dkt. No. 18] at 2; see also [Dkt. No. 18-1] at 1. As a result, the admissions were automatically admitted at that time. Byrd never raised any timely objections, nor did he file a motion for an extension of time to respond. Byrd also has not tried to file untimely responses, even after this Court, during the final pretrial conference, expressly warned him that his failure to respond to plaintiff's requests for admissions rendered them admitted. In his Opposition to Plaintiff's Motion for Summary Judgment and Motion to Withdraw Deemed Admissions ("Opposition"), filed November 6, 2025, almost two months after the discovery deadline, Byrd raised—for the first time—a motion to withdraw his deemed admissions. See generally, [Dkt. No. 24].

Byrd will not be permitted to withdraw his deemed admissions. As an initial matter, Byrd argues that Taylor's summary judgment motion was based "almost entirely on a procedural

7

technicality: 'deemed admissions' that resulted from [d]efendant's failure to timely respond to discovery." [Dkt. No. 24] at 1. Byrd asserts that as a pro se litigant, he "misunderstood the strict deadlines of federal procedure and failed to respond[,]" and that this was "not an act of bad faith." Id. Although courts construe pro se filings liberally, pro se litigants "are subject to the time requirements and respect for court orders without which effective judicial administration would be impossible." Ballard v. Carlson, 882 F.2d 93, 96 (4th Cir. 1989); see also McNeil v. United States, 508 U.S. 106, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."). Byrd's alleged misunderstanding does not excuse his delay.

Furthermore, neither prong of Rule 36(b) weighs in favor of withdrawal of Byrd's admissions. The first prong, the presentation of the merits factor, contemplates "facilitat[ing] the development of the case in reaching the truth." Id. (citing McClanahan v. Aetna Life Ins. Co., 144 F.R.D. 316, 320 (W.D.Va. 1992). Courts in this district have held that this factor weighs in favor of parties who have attempted to file untimely responses or have otherwise proposed amended admissions, despite failing to meet the original deadline. See, e.g., Precision Franchising, LLC, 2012 WL 6161223, at *6; Myers v. Mercedes-Benz USA, LLC, 2024 WL 3740056, at *2-3 (E.D. Va. June 26, 2024). By contrast, here, Byrd ignored all his discovery obligations by failing to respond to any of Taylor's requests for discovery.[4] See [Dkt. No. 18] at 2. In such cases,

---

[4] Byrd attaches a sworn affidavit to his Opposition and asserts that his representation in that affidavit suffices to dispute Taylor's allegations. [Dkt. No. 24]. Byrd's affidavit consists only of conclusory denials that are unsupported by evidence, and various unauthenticated communications and papers. See [Dkt. No. 25] at 2. Furthermore, the assertions in Byrd's Opposition and attached exhibits fail to comply with Rule 36(a)(4), which requires a party who denies a request for admissions to "specifically deny" the matter or to "state in detail why the answering party cannot truthfully admit or deny it." See Fed. R. Civ. P. 36(a)(4). Byrd's responses fail to identify which of Taylor's requests for admissions is being addressed, and fail to provide a factual explanation to support a genuine dispute. As courts in this district have

8

"presentation on the merits is not an option." J & J Sports Prods., Inc. v. Mumford, 2012 WL 1409588, at *3 (D. Md. Apr. 20, 2012) (finding similarly).

The second prong also weighs against allowing Byrd to withdraw his admissions. In analyzing this factor, "courts consider 'the difficulty the party opposing the motion to withdraw will face as a result of the sudden need to obtain evidence to prove the matter it had previously relied upon as answered.'" Precision Franchising, 2012 WL 6161223, at *7 (internal quotation marks and citation omitted). As stated in Precision Franchising:

> "[C]ourts have found that the following factors indicated that a withdrawal of admissions would result in sufficient prejudice to a relying party: a number of months had passed after the deadline to respond to requests for admissions; it was near or after the close of discovery; the relying party had foregone some discovery based on the admissions; the opposing party repeatedly had failed to respond to discovery requests or communications; and / or the opposing party had received some notice from the relying party or the court of the consequences of failing to respond to discovery requests."

Id. (citations omitted).

All of these pertinent factors are present in the instant matter. First, Byrd has failed to submit a response to Taylor's requests for admissions, almost three months after his responses were due, and almost two months after the discovery cutoff.[5] See [Dkt. No. 18] at 2. Second, Byrd's failure to respond is "part of a larger pattern of general unresponsiveness and repeated delinquency by [d]efendant during the overall discovery process and litigation." Precision

---

explained, parties "may not view requests for admissions as a mere procedural exercise requiring minimally acceptable conduct" but must respond in a manner that furthers "the goal of the Rules—full and efficient discovery[.]" House v. Giant of Maryland LLC, 232 F.R.D. 257, 259 (E.D. Va. 2005) (internal quotation marks and citation omitted). Furthermore, a "party who has answered a Rule 36 request for admission has a duty to supplement his or her responses." Id. (citing Fed. R. Civ. P. 26(e)).

[5] In his Opposition, Byrd argues that "plaintiff will suffer no legal prejudice from this withdrawal" because "[t]his case is still in the discovery phase." [Dkt. No. 24] at 2. As discussed above, this assertion is factually incorrect because trial was scheduled for December 10, 2025.

9

Franchising, 2012 WL 6161223, at *8. At the very beginning of this litigation, Byrd failed to comply with the Court's May 2, 2025 Scheduling Order to file a proposed discovery plan. [Dkt. No. 6]. Byrd did not appear at the initial pretrial conference held in this matter on May 21, 2025, and because he did not participate in the submission of a joint discovery plan, the Court adopted Taylor's proposed discovery plan at the pretrial conference. [Dkt. No. 10]. Byrd also failed to meet the deadline to respond to the other outstanding discovery requests, including plaintiff's interrogatories and document requests, in addition to the requests for admissions. [Dkt. No. 18] at 2. As discussed above, as of November 11, 2025, the filing of plaintiff's Reply, Byrd has failed to serve initial disclosures or any discovery responses and has also failed to file a witness and exhibit list for trial. Id. at 2.

Third, at this point, discovery has been over for about two months, as a deadline was set for September 12, 2025. See [Dkt. No. 6]. Fourth, plaintiff has alleged that he had "structured discovery and case management" around the deemed admissions, indicating reliance. [Dkt. No. 25] at 7. Fifth, Byrd has had notice of the potential consequences of failing to respond to discovery requests since the final pretrial conference. See [Dkt. No. 15]. "As a result, the Court concludes that [p]laintiff reasonably relied on [d]efendant's deemed admissions in determining how to pursue discovery and summary judgment and therefore would be prejudiced if it could not rely on them here." Precision Franchising, 2012 WL 6161223, at *8; see also [Dkt. No. 25] at 7. Accordingly, Byrd has not met the Rule 36(b) test for withdrawal and the Court will not permit him to withdraw his deemed admissions.[6]

---

[6] "Like other courts before it, this Court acknowledges the harshness of such a conclusion given that, as here, the failure to respond timely to admissions 'can effectively deprive a party of the opportunity to contest the merits of a case.'" Precision Franchising, 2021 WL 6161223, at *9 (quoting Hill, 2006 WL 2631796, at *3). "The result, however, is necessary to insure the orderly

10

B.

Given the conclusion that Taylor's Requests for Admissions are conclusively established, summary judgment is appropriate based on the deemed admissions as well as other undisputed evidence provided by Taylor. "It is well established that matters deemed admitted by default 'may constitute the basis for a court's favorable consideration for summary judgment.'" Precision Franchising, 2021 WL 6161223, at *9 (quoting Hill, 2006 WL 2631796, at *2); see also Adventis, 124 F.App'x at 173 ("Rule 36 admissions are conclusive for purposes of the litigation and are sufficient to support summary judgment.") (emphasis in original).

Count I alleges a claim of fraudulent inducement. [Dkt. No. 1] at 13-15. Under Virginia law, a plaintiff asserting a fraudulent inducement claim must show: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." Persaud Companies, Inc. v. IBCS Grp., Inc., 425 F. App'x 223, 226 (4th Cir. 2011) (quoting Evaluation Research Corp. v. Alequin, 247 Va. 143, 148 (1994)).

Here, the proffered default admissions establish that Byrd made multiple affirmative and material misrepresentations to Taylor, including that RN Appz was debt-free and had contracts pending with INOVA Health Systems; that Byrd had $12,000,000.00 in his bank account through cryptocurrency investments; and that Taylor's investments would be used exclusively for the business development of RN Appz. See [Dkt. No. 18-1], at 11-12, 14 (plaintiff's RFAs Nos. 7-8, 12, 14-15, 21). The deemed admissions also establish that Byrd omitted material information, such as the absence of revenue or contracts for RN Appz, see id. at 13 (plaintiff's RFA No. 16), and

---

disposition of cases for which parties to a lawsuit must comply with the rules of procedure." Id. (internal quotation marks and citation omitted).

that Byrd "knew those representations were false or misleading," id. at 12 (RFA No.13); see also id. at 13-14 (plaintiff's RFAs Nos. 17-20). Byrd has also admitted that Taylor "relied on [his] representations when deciding to transfer funds to [him]," id. at 17 (plaintiff's RFA No. 36), and that Byrd's conduct caused Taylor financial loss, id. at 14-15 (plaintiff's RFAs Nos. 22, 25, 27). Accordingly, Taylor has met his evidentiary burden to establish every element of fraudulent inducement, and will be awarded judgment on this Count.

Count II alleges a claim of actual fraud. [Dkt. No. 1] at 15-18. To prove a claim of actual fraud under Virginia law, a plaintiff must show: "a false representation of a material fact; made intentionally[;] reliance on that false representation to [the plaintiff's] detriment; and resulting damage." Klaiber v. Freemason Assocs., Inc., 266 Va. 478, 487 (2003). The deemed admissions identified above as to fraudulent inducement also establish actual fraud. Moreover, Byrd has admitted that his "representations to [p]laintiff concerning the profitability and near-term commercial success of RN Appz were knowingly false or made with reckless disregard for the truth," [Dkt. No. 18-1] at 14 (plaintiff's RFA No. 20). And as discussed above, he has also admitted that Taylor relied on such false representations to his financial detriment. Based on a review of this evidence, there are no genuine issues of material fact regarding any of the elements of Taylor's actual fraud claim and plaintiff will be granted judgment on this Count.

Count III alleges a claim of unjust enrichment. "The doctrine of unjust enrichment effects a 'contract implied in law' requiring one who accepts and receives goods, services, or money from another to make reasonable compensation for those services." James G. Davis Constr. Corp. v. FTJ, Inc., 298 Va. 582, 591 (2020). "It arises from the simple principle that one person may not 'enrich himself unjustly at the expense of another.'" Id. (quoting Rinehart v. Pirkey, 126 Va. 346, 351 (1919)). An unjust enrichment claim under Virginia law includes three elements: "(1) the

12

plaintiff conferred a benefit on the defendant; (2) the defendant knew of the benefit and should reasonably have expected to repay the plaintiff; and (3) the defendant accepted or retained the benefit without paying for its value." Id. at 597. Here, Byrd has admitted that he "received and retained funds from [p]laintiff totaling . . . $110,000.00 USD" for the "limited and specific purpose of investing in RNAppz, LLC [sic]." [Dkt. No. 18-1] at 14 (plaintiff's RFAs Nos. 21, 22). Byrd has also admitted that he "accepted and retained the funds transferred by [p]laintiff"; that "[p]laintiff did not receive an ownership interest, equity stake, or any other compensation in exchange for the funds he provided to [defendant]"; that he has "not provided [p]laintiff any return on his investment"; and that "retain[ing] [p]laintiff's funds without providing [p]laintiff the agreed-upon consideration would be inequitable." Id. at 16-17 (plaintiff's RFAs Nos. 32-35). These admissions establish Taylor's claim of unjust enrichment.

Lastly, Count IV alleges a claim of conversion. [Dkt. No. 1] at 19-20. "To assert a claim for conversion, a plaintiff must prove by a preponderance of the evidence (i) the ownership or right to possession of the property at the time of the conversion and (ii) the wrongful exercise of dominion or control by defendant over the plaintiff's property, thus depriving plaintiff of possession." Airlines Reporting Corp. v. Pishvaian, 155 F. Supp. 2d 659, 664 (E.D. Va. 2001) (citing Universal C.I.T. Credit Corp. v. Kaplan, 198 Va. 67, 75 (1956)). Furthermore, under Virginia law, "money can only be the subject of a conversion claim in limited circumstances, including when it is part of a segregated or identifiable fund." Stallard v. Bank of Am., N.A., 137 F. Supp. 3d 867, 876 (E.D. Va. 2015).

Through the default admissions, Taylor has established his claim of conversion. As discussed above, Taylor owned and transferred $110,000.00 identifiable funds for the specific purpose of investing in RN Appz, and Byrd accepted and retained those funds. See [Dkt. No. 18-

1] at 14, 16 (plaintiff's RFAs Nos. 21, 22, 32). Byrd has admitted that he used those funds, "at least in part, for [his] personal expenses and not solely for business purposes" related to RN Appz." Id. at 10, 15 (plaintiff's RFAs Nos. 4, 24). He has also admitted that "he failed to return [p]laintiff's investment funds after being asked to do so[,]" and "exercised dominion and control over [p]laintiff's funds in a manner inconsistent with [p]laintiff's ownership rights." Id. at 15-16 (plaintiff's RFAs Nos. 25, 30). The Court finds that these admissions conclusively establish the elements of conversion as a matter of law. As Taylor has established all claims alleged in his Complaint, summary judgment will be granted to plaintiff on all counts.

### C.

In his Motion for Summary Judgment, Taylor seeks $145,000.00 in compensatory damages, which includes the $110,000.00 invested in RN Appz, $20,000.00 invested in the associated "15 Blades" project, and an additional $15,000.00 "representing the lost time value of money and opportunity costs incurred over the multi-year period in which [d]efendant retained the funds." [Dkt. No. 18] at 12. Taylor also seeks $350,000.00 in punitive damages under Va. Code § 8.01-38.1 for Byrd's "willful, wanton, and fraudulent conduct[,]" attorneys' fees and related litigation costs, pre- and post-judgment interest, and any additional relief this Court deems appropriate. Id.

Virginia case law is clear that "tort damages are intended to compensate a 'plaintiff for all losses suffered by . . . the defendant's breach of some duty imposed by law to protect the broad interests of social policy.'" Nestler v. Scarabelli, 886 S.E.2d 301, 313 (2023) (quoting Kamlar Corp. v. Haley, 299 S.E.2d 514, 517 (1983)). "To further protect those interests, punitive damages may be awarded . . . to punish the wrongdoer and to deter similar conduct." Kamlar, 299 S.E.2d at 517. "'[P]unitive or exemplary damages are allowable only where there is misconduct or actual

malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others.'" Bhutta v. DRM Constr. Corp., 2023 WL 3901800, at *2 (E.D. Va. June 8, 2023) (quoting Horn v. Webb, 882 S.E.2d 894, 900 (2023)).

Taylor has produced evidence establishing that he has suffered a loss of $110,000.00 as a direct and proximate result of Byrd's fraudulent actions; however, his claim for an additional $35,000.00 is improper. Although the deemed admissions include admissions that Byrd "received funds" from Taylor "related to the 15 Blades project[,]"and that "the 15 Blades platform was never launched as a functioning commercial product[,]" [Dkt. No. 18-1] at 11 (plaintiff's RFAs Nos. 9-10), these allegations were never pleaded in Taylor's Complaint. Similarly, Taylor's claim for $15,000.00 representing "lost-time value of money and opportunity costs" does not appear within his Complaint and is unsupported by the deemed admissions. Accordingly, Taylor's additional claims for compensatory damages of $20,000.00 related to his investment in 15 Blades and $15,000.00 for lost-time value of money cannot be considered in his Motion for Summary Judgment. See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy").

Because Taylor has pleaded and successfully alleged claims of fraudulent inducement, actual fraud, unjust enrichment, and conversion, he is eligible for a punitive damages award. Although Virginia courts generally "do not 'favor[]' the 'imposition of punitive damages[,]'" Knapp v. Zoetis Inc., 2022 WL 989015, at *13 (E.D. Va. Mar. 31, 2022) (citing Owens-Corning Fiberglas Corp. v. Watson, 413 S.E.2d 630, 639 (1992)), "such damages 'should be awarded only in cases of the most egregious conduct.'" Id. (citing Owens-Corning Fiberglas Corp., 413 S.E.2d at 639.). The Court finds that punitive damages are appropriate in this case because of the

15

defendant's blatant refusal to comply with reasonable discovery requests and his extensive misleading of the plaintiff throughout their business dealings; however, the amount sought is excessive. The amount that Taylor seeks is the maximum amount allowed under Virginia law and is almost three times the amount Taylor is entitled to in compensatory damages. See Va. Code § 8.01-38.1. Therefore, the punitive damages award will be reduced to $25,000.00.

Lastly, the Court finds that attorneys' fees and related litigation costs are appropriate here. The Supreme Court of Virginia has made clear that an award of attorneys' fees is "proper if the trial court, exercising its discretion in a fraud case, awards equitable relief, and further determines that the circumstances surrounding the fraudulent acts and the nature of the relief granted compel an award of attorney's fees." St. John v. Thompson, 854 S.E.2d 648, 651 (2021). The circumstances here compel such an award, especially as defendant's failure to participate in the discovery process of this civil action placed a substantive toll on plaintiff's counsel. As Taylor alleges in his Reply, defendant "ignored multiple deadlines, . . . neglected to serve initial pretrial disclosures, and disregarded the Court's discovery orders and settlement-related requirements[,]" placing a considerable burden on plaintiff. [Dkt. No. 25] at 7. Accordingly, the Court will order plaintiff to submit a petition for reasonable attorneys' fees, as the party requesting fees bears the burden of demonstrating the reasonableness of the fees it seeks to recover. Precision Franchising, 2012 WL 6161223, at *10; see also Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990). Plaintiff's petition must include a breakdown of hours billed and other information relevant to the factors set forth in Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978), and other applicable law.

V.

For these reasons, plaintiff's Motion for Summary Judgment, [Dkt. No. 17], will be granted as modified by an Order to be issued with this Memorandum Opinion.

Entered this 9th day of December, 2025.

Alexandria, Virginia

/s/ *signature*
Leonie M. Brinkema
United States District Judge